# AGNIFILO
# INTRATER

---

January 16, 2026

**VIA ECF**
Hon. Christine P. O'Hearn
United States District Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, NJ 08101

    Re:    <u>United States v. Peter Coker, Sr.</u>, Crim. A. No. 22-643 (CPO)

Dear Judge O'Hearn:

Counsel for Peter Coker Sr. ("Peter Sr.") and the United States (together the "Parties") in the above-referenced matter respectfully submit this joint status report as required by the Court's December 22, 2025, Order (Dkt. 176).

The Parties jointly propose that the Court's Order to Show Cause be lifted based on Peter Sr.'s sincere efforts to comply with the Court's Restitution Order and lack of contemptuous action or intent. Most importantly, the parties have worked conscientiously to come to a joint proposal that they, again respectfully, propose that the Court endorse, which makes significant strides towards satisfying the Court's objectives and provides another basis for the Court to lift the Order to Show Cause. The proposal takes into account, first and foremost, both the rights of victims to "full and timely restitution" (18 U.S.C. §3771(6)) and the realistic financial circumstances of Mr. Coker Sr. and his wife. The Government's involvement ensures that the victims' rights are being respected while the Parties remain in compliance with the principles of federal restitution collection as administered by the Department of Justice and the applicable provisions of North Carolina law, which govern the ownership and distribution of Peter Sr.'s property.

The parties have communicated on no less than six occasions since the December 22, 2025, hearing, and Peter Sr. submitted to the Government, as requested, a Personal Financial Disclosure Statement. The Government has also applied for (and the Court has approved) a Writ of Garnishment as to Peter Coker, Jr. (*see* Dkt. Nos. 177-178) and is in the process of placing a lien on the real property owned by Peter Sr. in North Carolina.

The parties propose that Peter Sr. provide an additional lump sum payment of $200,000 immediately, which payment has been made on Pay.gov (*see* Ex. A), and continue to make regular monthly payments of $1,000. Further, the Parties are committed to continued cooperation to ensure that, upon the passing of Peter Sr. and his wife, Susan, the Government will be able to secure the real property and remaining assets of the Cokers to the extent any restitution remains outstanding in this case. Peter Sr. will also not dispute the Government's ability to place liens on these assets, notwithstanding arguments to the contrary he could make under North Carolina law. Finally, Peter Sr. will continue to provide quarterly reports to the Government, similar to the Personal Financial Disclosure Statement that he completed at the Government's request, to ensure that no assets are dissipated.

Hon. Christine P. O'Hearn
January 16, 2026
Page 2 of 4

The parties have come to this resolution based upon three fundamental issues regarding restitution. First is the law of North Carolina and possible issues related to the Government's ability to obtain assets held in Susan's name. Second is the financial condition of Peter Sr. and Susan. Third, and related, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In North Carolina, "[t]he ownership of funds in a bank account is presumed to belong to or be owned by the person(s) named on the account." *Mut. Cmty. Savings Bank, S.S.B. v. Boyd*, 479 S.E.2d 491, 493 (N.C. Ct. App. 1997). Moreover, it "is presumed that all property acquired after the date of marriage … is marital property." N.C. Gen. Stat. § 50-20(b)(1). As noted in Peter Sr.'s December 20, 2025, submission, and further explained at the December 22, 2025, hearing, the majority of the assets that are listed in the PSR are in the name of Susan Coker only. Under the presumption in North Carolina law, therefore, the Government would be limited to, at most, half of the marital property.

However, Peter Sr. concedes that this presumption "may be rebutted by the greater weight of the evidence." N.C. Gen. Stat. § 50-20(b)(1). When there is a controversy over ownership of funds, courts must undergo a fact-intensive analysis that looks to "facts surrounding the creation and history of the account, the source of the funds, the intent of the depositor . . . the nature of the bank's transactions with the parties" and "whether the owner of the monies deposited in the bank intended to make a gift to the person named on the account." *Id.* (citing 9 C.J.S. *Banks & Banking* § 281 (1996) and *Smith v. Smith*, 255 N.C. 152, 155 (1961)).

In this case, these issues could become complicated, because Susan did work outside the home and contribute to the family's income, but Peter Sr. was the main breadwinner for the family. Moreover, there are issues of the gifts or other transfers that a husband can provide to his wife over the course of a 61-year marriage. To avoid any further disputes and provide the maximum amount of money for restitution, as opposed to attorneys' fees arising from litigation of issues related to ownership and availability for restitution purposes, the parties discussed the matter at length. The parties' agreement avoids possible dispute and related litigation costs, and guarantees that the victims (both large and stable educational institutions) will receive restitution, while allowing for Susan and Peter Sr. to remain solvent while alive.

This leads to the second issue that the parties submit affects the restitution picture here: The state of Peter Sr.'s and Susan's finances. As detailed in the Personal Financial Disclosure Statement and reviewed by the Government, Peter Sr. and Susan do not have any earned income from employment because they are 83 and 80, respectively. *See* Ex. B (Personal Financial Statement). Therefore, as with most elderly Americans, they are living off of the interest income from their assets and Social Security. The monthly income listed in the PSR came primarily from high-risk but high-yielding instruments that paid significant interest. Many of those instruments (10 of 15) have now been sold to pay restitution obligations, taxes, and attorneys' fees. (None have been sold to dissipate assets or hide funds from the Government or the Court – precisely the opposite.) As a result, the Cokers are currently generating significantly less monthly income than they were at the time the PSR was filed.

Hon. Christine P. O'Hearn
January 16, 2026
Page 3 of 4

Third,  The parties' proposal does that, while not permitting the Cokers a windfall of any kind, and guaranteeing the payment of restitution to the victims upon the Cokers' demise.[1]

For these reasons, the parties jointly believe that the proposed resolution would Court leave the Cokers with assets sufficient to generate monthly income that, together with Social Security benefits, would allow them to be cash-flow neutral while they are alive. The parties' proposed agreement would also allow the Government to attach liens on the real property and to ensure monitoring of the accounts with these assets so that any remaining restitution can be repaid after the Cokers have passed away. The parties agree with the Court that restitution payments are a priority, but also that the principles of restitution as administered by the Department of Justice also take into account the defendant's ability to pay restitution, including living expenses and health care costs.

Finally, and most directly for present purposes, the Government agrees with Peter Sr. that the Order to Show Cause should be lifted because there is no evidence of contemptuous behavior. Peter Sr. respectfully requests to incorporate all of the arguments made in his December 20, 2025, submission to show that none of his actions have been contemptuous. Instead, Peter Sr. submits that because has not dissipated or transferred assets in an attempt to avoid his restitution obligations; or made any large purchases with money that is owed to victims; or engaged in any deceptive practices to evade the Order's requirements, that his conduct is diametrically opposed to cases that have found willful violations of restitution orders. *See, e.g., United States v. Hurtado*, 756 F. App'x 63, 68 n.3 (2d Cir. 2018) (resentencing defendant to incarceration under § 3614(b) where defendant used funds on "outrageous" personal expenses and not restitution (internal

---

[1] Part of the reason that this proposal is reasonable is that the marital assets were lawfully earned over a lifetime of hard work and that Susan has relied on these in her old age. Susan shouldn't suffer because her husband committed a crime and then her son left him on the hook for the entire loss amount despite playing a bigger role. It's an unfair and unforeseen consequence to a woman who has done absolutely wrong and whose marital assets were not part of the fraud.

quotations and alterations omitted)); *United States v. Johnston*, 595 F.3d 292, 296 (6th Cir. 2010) (defendant's nonpayment of restitution was willful where the defendant had made zero restitution payments before the evidentiary hearing and had used assets to pay personal debts and expenses rather than restitution); *United States v. Kestenbaum*, 908 F. Supp. 2d 364, 379 (E.D.N.Y. 2012) (defendant's refusal to pay restitution was willful where he used the resources to "sustain his and his family's lifestyle rather the repay the victim of his crime" and intentionally made false statements in his financial disclosures to avoid paying restitution). Further, Peter Sr. has made efforts to communicate with Peter Coker Jr. ("Peter Jr."), his son and co-defendant, to bring Peter Jr. into compliance with the Court's orders and contribute to the restitution obligations. Unfortunately, those efforts at communication have not succeeded to date.

     As stated in defendants' prior submissions, we submit respectfully that there has been no intent to purposefully fail to make payments, to dissipate assets, or to transfer assets in any kind of contravention of the Court's Orders or the defendants' continuing obligations. Therefore, it is clear that there has been no contempt.

Respectfully submitted,

_____S/_____             _____S/_____
AUSA Jordan Anger             Zach Intrater
United States Attorney's Office      Agnifilo Intrater LLP
District of New Jersey            140 Broadway, Suite 2450
970 Broad Street               New York, NY 10005
Newark, NJ 07102            (917) 721-7331
(973) 645-2700